The next case on the call of the docket is agenda number 7, case number 124999, Florida Security et al. v. City of Chicago. Mr. Chris Heck. Good morning, your honors. I'm Chris Heck on behalf of the City of Chicago and may it please the court. Plaintiffs negligence count fails to state a claim because regardless of what remedy plaintiffs seek, they admit that they do not suffer from existing physical injury or illness. Therefore, they do not have a legally cognizable injury. Three foundational principles of Illinois negligence law bar a plaintiff's claim. The first is that negligence requires a physical injury. As this court held in the AC&S decision, this court's cases have, quote, reinforced the necessity of physical damage to other property or personal injury, end quote, for negligence claims. This court's decisions in Moorman and William v. Manchester confirmed the requirement of a physical injury. By contrast, plaintiffs do not cite any case from this court distinguishing these authorities or holding that negligence does not require physical injury. Indeed, on page 19 of their brief, plaintiffs admit that, quote, courts previously may have limited negligence claims to recovery for injuries of bodily harm, end quote. That is still the law today and defined as a legally cognizable negligence injury. The second principle is that an increased risk of harm is not an injury. This is one of the holdings of William v. Manchester. The third principle is that negligence claim requires both injury and damages as separate elements, and that having damages does not mean that one has an injury. This is another holding of Williams. Applying these three basic principles shows how both the appellate court majority and plaintiffs err, and plaintiffs have no negligence claim. The majority opinions holding that exposure can constitute injury contradicts these principles. First of all, exposure is not a physical injury. At most, exposure might increase one's risk of harm, but increased risk of harm also is not an injury. Indeed, Williams v. Manchester squarely rejected the argument that, quote, radiation exposure is an increased risk of future harm, end quote. Here, plaintiffs are alleging that the city damaged plaintiff supply lines such that they now have to be replaced, right? That's as part of their inverse condemnation claim, Your Honor. Right. This is the negligence claim, but happy to deal with the claims in whichever way you like. That's all right. You can continue with the next. You're going to get to the inverse condemnation. Exactly, Your Honor. Yes, we'll get to the inverse condemnation shortly. All right. In McGowan-Williams, plaintiffs do not provide any argument in support of majority's exposure as injury position for their negligence claim. Instead, plaintiffs argue that medical monitoring costs without physical harm can constitute an injury, but this is likewise precluded by the three fundamental negligence principles I've described. First, plaintiffs admit they do not suffer from existing physical injury or illness, and so they lack the physical injury required under Illinois negligence law. Second, plaintiffs plead that their negligence claim seeking medical monitoring is based on an increased risk of harm. Plaintiff's own complaint in paragraph 103 alleges their negligence claim is based on, quote, their increased risk of harm, end quote. And plaintiff's own brief at page 21 states that they seek, quote, medical testing because of a threat to the plaintiff's health due to defendant's negligence, end quote. Indeed, plaintiff's only reason for seeking medical monitoring is an alleged increased risk of harm from exposure to elevated blood levels. Williams holds that increased risk of harm is not an injury, and thus plaintiffs cannot state a negligence claim. Third, medical monitoring costs are, at most, damages, not the separately necessary element of injury. And this flows from the interaction of Dillon v. Evanston Hospital and Williams v. Manchester. Under Dillon, this court held that an increased risk of future harm can be recovered as damages, and thus it is an economic loss. But as Williams holds, that economic loss is not an injury, even though it can constitute damages. That same conclusion applies to medical monitoring. Medical monitoring costs are, at most, an economic loss that may constitute damages. They are not the injury necessary for a negligence claim. Thus, each of these three fundamental principles of Illinois negligence law demonstrates that a plaintiff seeking medical monitoring costs does not have a negligence claim without injury. That conclusion is reinforced by other doctrines and decisions both inside and outside of Illinois. In particular, the economic loss doctrine separately bars a plaintiff's negligence claim. This court has held that the economic loss doctrine bars costs incurred in the absence of harm to a plaintiff's person or property. Plaintiffs here admit that they have no existing physical injury or illness, and thus their negligence claim is barred by the economic loss doctrine. Both this court and the appellate court have applied the doctrine to economic losses caused by floods or contaminated water, such as in this court's decision in the Interstate Chicago flood and the appellate court decision in Donovan v. County of Lake. The majority concluded, and plaintiffs argued, that the economic loss doctrine doesn't apply because plaintiffs allege damages are not based on disappointed commercial expectations or contract law, but this court expressly rejected such a limitation in Beretta v. City of Chicago, a case neither the majority nor plaintiffs attempt to distinguish. Plaintiffs also rely on the AC&S decision to argue that the economic loss doctrine does not apply. That case is easily distinguishable.  The nature of the defect and the damage caused by asbestos is unique, and is a, quote, harmful element existing throughout a building or an area of a building which by law must be corrected, end quote. None of those facts are present here. By contrast, plaintiff's negligence claim is not a complaint about damaged plaintiff's property, but about the quality of the water delivered to buildings in which plaintiffs reside and the city's warnings. Moreover, both Chicago, Flood, and Donovan applied the economic loss doctrine under more apposite facts, alleging economic losses from flooding or contaminated water. Other jurisdictions, particularly those that follow the same fundamental principles of negligence law as Illinois, have likewise rejected medical monitoring without physical injury. These include the highest courts in New York, Oregon, Michigan, and Kentucky, among others. For example, New York's highest court rejected medical monitoring without physical injury because the, quote, requirement that a plaintiff sustain physical harm before being able to recover in tort is a fundamental principle of our state's tort system, end quote, such that a, quote, threat of future harm is insufficient to impose liability against the defendant in the court context. Finally, policy considerations for rejecting medical monitoring without physical injury is recognized by these state Supreme Court cases as well as the United States Supreme Court's influential 1997 decision in Metro-North Commuter Railroad v. Buckley. These courts have recognized that we're all exposed daily to countless potential hazards, such that allowing recovery for these without physical injury would open courts to a flood of unharmed plaintiffs. Medical monitoring without physical injury also would consume defendants' limited financial resources, impairing their ability to play plaintiffs with actual injuries, and also would especially concern the case of an entity like the city, where that would detract from the city's ability to provide vital safety and other services to its residents. In addition, what additional monitoring is necessary beyond the medical care a plaintiff already received is difficult to determine, especially in the absence of any physical injury. And now moving on from negligence, and before you do, are you making any tort immunity claim here? We do, Your Honor. That would be the third part of our argument, yes. Okay, just the discretionary policymaking? Yes, Your Honor. All right. You can proceed then with the inverse condemnation, as far as I'm concerned. So moving on from negligence, plaintiffs likewise fail to plead an inverse condemnation claim for three independently sufficient reasons. First, Belmar Drive and Theater Company v. Illinois State Highway Commission forecloses plaintiff's inverse condemnation claim under the necessarily incentive property ownership doctrine. In Belmar, new highway lights flooded an outdoor theater's property with illumination and destroyed its business. The theater suffered unique damages that other residents and businesses did not, and the theater did not receive any benefit from those highway lights. Yet this court held that the theater cannot recover under the necessarily incentive property ownership doctrine. That doctrine applies here, where the city is repairing existing infrastructure, as would be expected and indeed demanded by property owners. Second, plaintiffs lack the special damages necessary for their inverse condemnation claim. As it is set recognized, plaintiffs had the same kind of damage as any other resident with lead service lines, that is 80% of the city's population would suffer if the city replaced a nearby water main. Under Willis-Nellis' precedence from both this court and the appellate court, the same alleged damage shared by a large number of the public is not special. For example, this court held that- Let me stop you there. I would think that would be correct. I would think if plaintiffs were alleging that something about the water main improvement itself, like increased water pressure, rendered their existing lines inadequate or obsolete, and therefore they were in need of replacement. But as I started earlier asking you, here plaintiffs are alleging that the city damaged plaintiff's supply lines, such that they now have to be replaced. Isn't that a compensable injury? Like if a city maybe tree trimming truck cut down limbs and it fell on a car, I mean, wouldn't that be compensable? Well, I think that the tree trimming example of limbs falling down on a car might be an example of someone that had a unique damage. I think to take your question, both to go back to Belmar and then come back to special damages, under Belmar, the movie theater there did have significant damages that his business, in fact, could no longer be maintained because of this light flooding into their property. And yet this court held, under the property ownership doctrine, that plaintiffs did not have a claim. Moving on to special damages, and a lot of this is both plaintiffs will resize based on older case law, which often looked at whether cutting off a viaduct, for example, or cutting off someone's access to the street. This court's decisions had held back in the late 19th century, early 20th, that that was damage to a person's property. Yet in cases such as in the City of Chicago vs. Union Building Association, where a street was shut off, which might normally be considered to be a sort of damages, this court held that because it affected everyone within the loop, that that was not a special damages, rather that it was something shared by the public. But presumably not everyone's supply lines are alleged to be damaged, right? It would not be everyone, but it would be 80% of the population inside of the city. And I think in the same cases, when you look at these other cases where the court has held that damages were shared by the general public, that likewise you wouldn't have everyone damaged. For example, in the Union Building case I just mentioned, not everyone goes to downtown Chicago and would be affected by the street closure. There would be many people who live in other parts of the city who would be wholly unaffected by that street closure. And yet this court still held that there were no special damages, given the size of the population that would be affected. So if I understand your argument, they're alleging that the city effectively broke their pipes, right? That's damage, but it's not damage because they broke other pipes as well? Your Honor, I think this is what this court has held in terms of this doctrine. So I want to be clear here that when we talk about inverse condemnation claims, the Illinois Constitution provides that taking and damages are a claim. And so when the city specifically takes someone's property, that's in a different category. That's not what the plaintiffs allege here, and that's not what's under consideration. Instead, we're talking about the damages category. And what this court has held in terms of inverse condemnation is not every sort of damage to someone's property is something that's recoverable. There may be various types of damage that reduce the value or otherwise harm the property, and yet it's not recoverable. What the court has established and what follows there is that a plaintiff seeking damages under the takings provision has to establish special damages. When you look at this court's cases, plaintiffs have not cited a single case where special damages were found for more than a few residents, much less thousands scattered across the city. Moving on to the third reason that plaintiffs' inverse condemnation claims should be barred is the city's discourse decision in the city of Chicago versus Prologis. Prologis holds that, quote, where loss or injury are the consequences of a lawful government action, the government does not owe just compensation, end quote. There's no dispute that the city's water infrastructure repairs were lawful. The city's alleged loss, that the plaintiff's alleged loss is the consequence of that lawful action, and therefore Prologis applies. Plaintiffs try to distinguish Prologis by claiming the injury there was indirect, but they provide no explanation of how their alleged injury is here or any less indirect, especially given that in Prologis the city's action necessarily destroyed the value of the bonds. Have we ever held that actual physical damage is not damage as to economic loss or inconvenience? I would say that in Belmar would be an example where you had actual physical damage of the light flooding the business's property and preventing them from operating, and yet the sport held under the necessarily incentive property ownership doctrine that was not compensable damage. And so finally, the last issue is that the city is entitled to discretionary immunity under the Florida Immunity Act for both the plaintiff's claims. To begin with, contrary to plaintiff's arguments, discretionary immunity should be based on the allegations in the plaintiff's complaint, can be recognized based on the plaintiff's complaint. The city has immunity here just as in the Chicago flood. The Chicago flood was decided on a section 2615 motion relying on the plaintiff's allegations. There, the city had to make various decisions after learning of a tunnel breach, including how to repair the tunnel and whether and how to warn the public. Plaintiff's own allegations show that the city exercised this discretion here just as in the Chicago flood. Plaintiff's alleged the city made the decision to modernize its water system, replacing water mains that date back to the 1800s. Plaintiff's also alleged the city decided what precautions it would advise residents to take after water main replacements and decided to change those precautions over time. Plaintiffs were unable to distinguish the Chicago flood, which is squarely on point. By contrast, the cases of plaintiff's site are an apposite. Indeed, plaintiff's cases typically involve a municipality failing to make a repair or did not even know about the issue. The opposite of the facts here are where the city identified an issue and chose to fix it. The majority opinion denied discretionary immunity because it incorrectly held the city's actions were ministerial based on the recommendation of an outside private organization. But this court has established that ministerial acts are those, quote, in obedience to the mandate of legal authority, end quote. There is no dispute here that the city's discretion was not constrained by law. Neither the majority opinion nor plaintiffs cite any authority that an outside organization's recommendations can render an act ministerial. Indeed, on this issue, plaintiffs don't defend the majority opinion at all. Instead, plaintiffs claim that their medical monitoring is equitable rather than seeking damages, and so outside the scope of the Tort Immunity Act, the discourse decisions either the cases plaintiffs rely on prove otherwise. The court relaying on the plaintiff in order to- Counsel, if in fact the negligence action we say can be brought at this time and plaintiffs get damages in the form of medical monitoring, can members of the class also bring suit in the future if they suffer physical injury? From the lead drinking water? Your Honor, we would say no, that that would be foreclosed under another different holding of Dillon v. Evanston Hospital, which is the single recovery rule. In Dillon, this court held that under the single recovery rule, a plaintiff had to bring a single action to recover all the remedies that he or she could, both accrued and unaccrued. And there in particular, the court held that various potential future ailments, such as a 0% to 20% infection or less than 5% chance of arrhythmia, had to be recovered for in that action, even though they had not yet occurred and may never occur. So therefore- Just a quick question. Does tort immunity apply to both of your claims? Yes, Your Honor. It does apply to both of them, as we discussed in the-particularly in our reply. To be very brief, it applies to the medical monitoring- I'm sorry, it applies to the plaintiff's negligence claim because they're seeking damages as defined under this court's precedence. Indeed, one of the cases, an appellate court case they've argued heavily, Lewis, refers to medical monitoring as being damages, compensation, and costs. The Illinois Patent and Jury Instructions also describe sort of medical testing as being covered within the reasonable expense of necessary medical care, treatment, and services rendered. On the inverse condemnation claim, the Tort Immunity Act applies, despite the plaintiff's arguments claiming that the act cannot apply to constitutional claims. And that's because the Constitution expressly allows the General Assembly to provide sovereign immunity by statute in Article 13, Section 4. And this court held in Harris v. Thompson that this constitutional provision now makes the General Assembly the ultimate authority determining whether local units of government are immune from liability. So we don't have a case of the statute trumping the Constitution? Well, here you have the Constitution itself allowing the General Assembly to pass such a statute. This is the significance of Harris v. Thompson saying that this constitutional provision allows the legislature to determine the scope of municipal immunity. So I would say that this is perfectly consistent with the Constitution. In terms of the language of the Tort Immunity Act itself, it makes clear that it applies to injuries, that injuries, it includes any injury alleged in a civil action, including, quote, those under the Constitution of the State of Illinois. Absolutely, Your Honor. Thank you very much. Hello, Your Honors. May it please the Court. My name is Mark Vasquez, and I represent the employees of this matter. Lead is toxic. Lead is dangerous. It causes all sorts of physical ailments, medical conditions, and mental problems. And because of the actions of the city, it's lurking in the drinking water in the homes of many Chicagoans. Two such Chicagoans filed this case for us four years ago. And during that entire four-year span, this litigation has focused almost exclusively on two questions. One, whether Illinois will join the number of states, which is now a majority of states that have addressed the issue, and will allow medical monitoring relief as part of a negligence action. And the second question is whether plaintiffs have adequately pleaded damage to their personal property, in this case their service lines, to state a claim for inverse condemnation. Fundamental to both of these inquiries is a very basic question. And it's one of the most basic questions a court can answer, and that's who should pay. More specifically, where one party has suffered an injury and another party has caused that injury, who in the interest of justice should pay for the consequences of that injury? Looking first at the issue of medical monitoring, common sense provides an answer. And this common sense rationale explains why so many states have adopted these causes of actions. Medical monitoring remedies a very specific situation. Are those states allowed as the exclusive remedy? Obviously different states do it a little bit differently. Some states, it is, yes, an exclusive remedy. In fact, it's a tort on its own. For example, New Jersey recognizes a separate cause of action, where medical monitoring has its own elements, and it is a separate tort. But most states, it is an evolution of the negligence action. And what I mean is that they grant the courts use of their equitable powers to fashion an equitable remedy in response to this harm. Can you help me with that? I mean, it's a really basic law school kind of idea. What is negligence? Duty, breach, causation, damages. Usually the tortfeasor paying to compensate the plaintiff for damage. That's not what this is, though, right? This is not that transfer of money from tortfeasor to the individual who has been harmed. This is more like injunctive relief as a remedy, correct? Yes. How does that fit into our classic tort law, understanding what is a tort? Well, I don't think that tort law necessarily requires just damages. And nor do I think that tort law has ever required a physical harm. Now, while we have litigated this issue, and we understand that typically in negligence there is a physical injury, but that's not true in tort generally. And we recognize causes of action for defamation. We recognize causes of action for interference with business relations. And in those situations, the remedy, again, is an exchange of money. It's not injunctive relief. Correct. But the court always retains its ability and its equitable powers to afford the relief that fits the injury. For example, the Donovan case out of Massachusetts that we cite in our brief, there's a long discussion about this, how the relief is fashioned and fits the injury that's alleged, and that this is an injury that should be compensable in tort. There's real harm here, and that the appropriate remedy is to fashion this fund, this medical monitoring fund. Because when you think about the actual circumstances, it makes sense. You know, an example that I've used multiple times is that if we have a company, a private company, and they spill toxic waste into a river, there's no question that the spill is negligent. There's no question that that toxin causes cancer. And there's no dispute that everyone who lives along that river, well, they're going to need some form of medical monitoring now. They're going to need to be tested. Just, again, a real basic, you know, analysis here. Do we analyze this as a tort, or do we analyze this as permanent injunctive relief? Well, we do. I mean, there are whole different, you know, worlds of analysis, of standards, et cetera. Which is this? So we brought it as a tort, because that's how it was presented. That's how it existed under Illinois law at the time, based on Lewis and other federal decisions. And so that's how we have approached this issue, and that's how we've approached it because that's how other courts have done it as well. But in essence, it's a high- Lewis and the federal district courts that you mentioned. Correct, as well as other states. Albie, you say the majority of states have adopted your point of view. How do they analyze it? They call this a tort? Yes. I mean, it's technically a hybrid. The lines are, in some respect, blurred, because it is an equitable remedy under traditional court law for negligence principles. So the elements of the cause of action are essentially a cause of action for negligence, but the remedy is an equitable one. So the damages are not needed? Correct. It is not a case for compensatory damages. It is a very specific type of injunctive. If we agreed with your position, counsel, would we potentially be allowing any claim for any kind of an exposure to a toxic substance? No, and I think there is obviously a temptation here to view this as just an exposure case, where any exposure results in an actionable harm, and that's not what we're saying, and that's not what medical monitoring cases remedy. For example, in the Williams case that the city cites and relies on heavily, we wouldn't be arguing that that case would be actionable, that mere exposure to radiation from an x-ray would require medical monitoring. The cause of action is limited by the fact that medical monitoring actually needs to be necessary. The testing actually needs to be medically necessary for there to be a cause of action in the first place. So it's not just any exposure. In fact, in some cases, it's not exposure to a toxin at all. For example, one case that proceeded in the Illinois district, the federal courts in Illinois, Judge Lee, before Judge Lee, that was the NCAA concussions case. So there was no exposure to a toxin there, but the negligence of the NCAA in hiding the effects of concussions and encouraging athletes to play with concussions, that negligence created this harm. These athletes now needed to undergo medical testing that they otherwise wouldn't have had. So it's not just exposure to a toxin gives you a cause of action. It is that the defendant's negligence has created a need for testing. So is there a minimum threshold? Is there a minimum threshold necessary for a claim to be actionable? That would just depend on the circumstance, what is alleged. In any given case, depending on what the circumstances are, they'll be different. But the standard that most courts use is that whether the defendant's negligence has made it medically necessary for these plaintiffs to undergo medical monitoring. So why isn't exposure to radiation sufficient? Well, I only bring up that case as an example because in that instance, the exposure to that amount of radiation from an X-ray wouldn't require any further follow-up. It wouldn't require any medical monitoring in that situation. In other words, they have not, the defendant in that case did not create a health problem that would require medical tests in the future. One could argue that, well, now if someone's been exposed to an X-ray, hypothetically there could be some potential damage there in the future. But it's not, the defendant hadn't made it medically necessary now to undergo testing for some disease or animal. You would agree that different rules apply to different causes of action, right? How we look at things, I mean, we have to look at what the cause of action is, right? And you mentioned that this is a hybrid. Don't we have to figure out what this is? You said that damages aren't necessary. How can something be a tort without damages? Back to Justice Tice's line of questioning. How can it be a tort? Well, it's a tort in the sense that, you know, in the same sense that a harm has been committed, and the plaintiffs are seeking a remedy, but the remedy itself is injunctive relief. And otherwise, the remedy is fitting the injury here. Damages wouldn't cure what the harm is. So we look at rules that would apply to injunctive relief? The law as it applies to injunctive relief? We've been arguing in the appellate court, right, looked at two areas. They looked at negligence, and they looked at inverse condemnation, right? So are you asking us to do some type of an injunctive relief analysis here? No, I mean, I think we're not asking you to affirm a traditional negligence claim. I think that is very much clear. We understand that the Illinois Supreme Court hasn't dealt with this issue before. What we are asking for is to allow plaintiffs to seek an equitable remedy in a negligence action where they have been injured in this way. So how do you respond to the tort immunity argument as it pertains to the negligence claim? Well, I think there's two responses to that. And one is that this is inequitable. Well, it's correct. It's not really a tort. We are seeking equitable relief here. It's clearly injunctive relief. The city asks you to simply ignore a long line of federal decisions where they analyze this relief and they say, well, it's obviously equitable. And the city's reasoning for that is, well, those were class actions and they were analyzing it under Rule 23. But that doesn't explain why the remedy isn't inherently equitable. In other words, why should that matter? Rule 23 changed the inherent nature of the remedy itself. So this is equitable relief. We're seeking equitable relief. And therefore, the Tort Immunity Act doesn't apply. But even beyond that, the city simply hasn't met its burden. And that's something the Appellate Court held. And frankly, I understand the case is very recent, so we didn't talk about it in our briefing. I believe it was only a matter of weeks ago. But in the Andrews case, it's the defendant's burden to submit evidence on this and to, you know, for two reasons, I think it's pretty clear that the exercise of tort immunity at this stage would be improper. Now, moving on, I think it's not only just an issue of this basic sense of justice here, but there's also public policy reasons to adopt such an action. And that's that states should actually, you know, we should want to deter this type of conduct. This is the type of conduct that threatens large groups of people. Excuse me, counsel, but isn't the conduct one that started in 2008 to repair or to remove old water lines to put new ones in? Well, when I say this type of conduct, I'm speaking... Would it be better that they kept the old water lines in? Maybe it wouldn't be here today. Well, what we're saying is, what our complaint is, the negligence wasn't this decision to improve the water system. The negligence was in how they did it. No, performing partial lead service line replacements. So other cities, for example, do not do it in this method that endangers the residents of the home. The city has, as we discussed in our brief, there's a lot of residents who have lead service lines. And the process they went about replacing the water main damages those lead service lines and puts the residents of the home that now they increase the amount of lead in their waters. Why? Because of that. So it's not the decision to improve the water system in Chicago. It's simply how they did it. But not only should we be deterring this type of conduct, we also want to encourage those affected to seek medical treatment early. Because we probably all know someone who it perhaps saved their life because they caught something early. Or perhaps we're unfortunate to know someone who didn't. And so sometimes people aren't even aware of the harm that they've been exposed to or the harm that they've suffered. And the mere case itself and the class action mechanism can provide notice to those people. And I think the city is claiming that the justification here for not adopting it is we're going to open the floodgates. It's probably an argument you have heard many, many times, but not very often are we actually given the benefit of hindsight. We have decades of case law in other states. In fact, it's been over 20 years since Lewis was decided, longer since Illinois federal courts have been allowing this cause of action. And I think the fact that it has taken that long just to reach here gives you a sense that these are pretty rare cases. You're not going to get the level of abuse that the city claims there will be. And time has proven that. Now, I realize that I'm running a little short on time, so I want to just address the inverse combination claim here. And that's this sense that the city is arguing that while the number of homes affected eviscerates their claim. In other words, even if there is a damage to your home that the city has caused, it's not compensable because we did it a bunch of times to other homes as well. And there is simply no case, they have cited no case that says that. And again, it just sort of goes against common sense. This is a inverse condemnation is a type of eminent domain. And in a lot of instances, eminent domain cases affect a lot of people. And you can think of hypotheticals. If the city of Chicago were to build a new outlaw, which is something it has actually talked about doing, a lot of homes are going to be affected. A lot of backyards will be damaged, a lot of fences will be ripped up. The mere fact that a lot of homes, potentially hundreds in that case, will be affected shouldn't eviscerate their constitutional cause of action. Is a class action appropriate for inverse condemnation? It can be. In other words, the question of whether a number of homes have been harmed and its effect on an inverse condemnation claim, and whether that harm was similar enough to certify a class with two separate issues. Right here we're dealing with the issue of... under Illinois law, which is where there is a direct physical harm to plaintiff's property that is not experienced by the public in general. So that is defined, special damages is defined in that way. And we have that. We have direct physical damage to plaintiff's property, and the general public hasn't been harmed that way. I live in Chicago. My service lines weren't harmed. And while the city uses the 80% number, that's the number of homes that have led service lines. That's not the size of the class. The size of the class would be limited by those who have been affected in this way. Class certification now looks at, well, are all the class members harmed in the same way that one trial on common evidence is practical? And is that the best way to do this? Regardless that the cost and the work required could be vastly different between property A and property B? Well, I don't know if it will be vastly different. And that, as I say, is a question for another day. That's the inquiry on class certification, is whether or not this is feasible, whether or not the damages are similar enough, whether or not the harm is similar enough, that a class trial can make sense. And the class certification isn't before us, right? Correct. But it was very interesting to talk to you about that. Thank you. Thank you, Your Honor. I want to start with counsel's claims about questions of who should pay or what is the sense of justice. And what this court has repeatedly held is that even if you have damages, if you do not have a legally recognized injury, you cannot recover. And the cases, there are several cases of the parties briefed that stand for that proposition. Two of them in particular are Manchester v. Williams. Williams v. Manchester, which expressly holds that injury and damages are separate elements. And because the plaintiff did not have damage or injury there, they cannot recover damages, even though you had a fetus that had been irradiated and the court had previously recognized that an increased risk of harm could be damages. The other case would be Belmar, where this court expressly, again, recognized the concept of damages without injury. Even there, the plaintiff, his business had been destroyed, he had lost profits. Yet this court held that because there was no injury, he cannot recover. Three other cases along those same lines, each involving more arguably larger economic losses. One would be Chicago flood. In that case, you had residents of the city who had to evacuate. They claimed that they had lost wages, tips, and commissions, all serious economic losses. Some of them had had to stay in other hotels, pay out of pocket for different housing. Yet the court held that none of those economic losses were cognizable because they had lacked an injury since they did not satisfy the economic loss for them. Another example would be Beretta v. City of Chicago, where the court with the city and county explained that they had over 430 million of damages, increased health care expenses, and increased emergency expenses based on the conduct of gun manufacturers. Yet this court again held because there was no legally cognizable injury, the economic loss for other reasons, that these plaintiffs could not recover. The other thing, plaintiffs say that they assert that tort generally does not require physical harm. But again, we're talking specifically about negligence here. That's the claim that was brought, not some other tort. And plaintiffs do nothing to rebut the argument that we make in our briefs, we made previously, that negligence does require a physical injury. They don't distinguish any of those cases or cite any cases in Illinois from this court allowing recovery under negligence without a physical injury. The other thing that your Honor has asked about, if we allow this claim to go forward, wouldn't we be allowing a claim for the exposure? And counsel said, no, it's just medical monitoring. What requires medical monitoring is really up to the creativity or fancy of what any clever attorney might argue. This is what the dissent recognized when it quoted from the Michigan Supreme Court's decision, Henry v. Dow Chemical, that rejected medical monitoring without physical injury. Quote, to recognize a medical monitoring cause of action would essentially be to afford carte blanche to any moderately creative lawyer to identify an admission from any business enterprise anywhere speculated by the adverse health consequence of such admission and thereby seek to impose on such business the obligation to pay the medical cost of a segment of the population that has suffered no medical harm. End quote. That's on page 844 of our appendix. And again, I think it was sort of telling in the discussion that plaintiffs here admit they don't have a traditional cause of action, that what they're seeking hasn't been recognized under Illinois law. And in fact, as just stated, actually contradicts several basic principles of Illinois negligence law, which plaintiffs do not address. The other question that came up was, what if the city said we did not replace or improve the water system? And I would note here that we cite a case in our briefs called Scheringa, which expressly, from this court, expressly quoting that such decisions about what public improvements to make, how the city spawns are left up to municipalities to decide what public improvements to take on. And recognizing this cause of action, especially as plaintiffs cognize it, would effectively transfer that power from the city to other private plaintiffs who wish to bring causes of action. The last point I would make in terms of talking about seeking medical treatment early, nothing that the city is doing here prevents anyone from seeking early medical treatment if they need it. If someone wants to go seek medical monitoring, they are perfectly free to go pay for that or by insurance, Medicare or Medicaid, the same they would as any other sort of damages or injury. And what I would note here is, in fact, under the cause of action remedy that plaintiffs were talking about, generally there won't be early medical monitoring, even if you recognize what they're asking for, because you're going to have years of litigation, as we've had here, before you reach the question of whether any medical monitoring could be awarded, especially since these cases are almost always brought as class actions, which often take more time in the court of the parties. I think that's all the points I wanted to address. I'm happy to answer any questions you may have. Thank you very much. I'm going to ask you to reverse the majority opinion of the appellate court to confirm the Circuit Court's dismissal of these claims. Case number 1249-9144 versus the City of Chicago. As case agenda number 7 will be taken under advisement. Thank you, Mr. Heck, and thank you, Mr. Fezquez, for your arguments this morning. Mr. Marshall, the Illinois Supreme Court stands adjourned.